You may begin. Yes, Your Honor, and I'd like to reserve 10 minutes for rebuttal. My opening will take about five minutes. All right. Your Honors, I think we need to begin with the nature of the Japanese complaint to fully understand the error that Syscom believes occurred in the district court. The Japanese complaint sought liability under Japanese Civil Code Article 709. The district court interpreted that article to have sort of the same standard as an alter ego liability. That interpretation allowed the district court to then conclude that the Japanese action was more like an effort to overturn the district court's ruling on adding Nakajima Co. as a defendant rather than what Syscom believes to be a fraudulent conveyance type case where Syscom is alleging that in the process of the case being reduced to in the district court took steps to essentially shut down Nikko and transfer Nikko's business first to Nakajima Co. itself and ultimately to We Active. Counsel, my understanding is in the action in Japan, you sought to hold Nakajima Japan liable for its own conduct, not, and it was conduct, right, that you allege occurred after the close of discovery in the California action, what I'm going to call the California action, right? Correct, Your Honor. There's a difference between holding it liable as the corporate parent for the actions of a subsidiary and holding it in Japan. I don't know that I saw that, and I ask you both the same question, did the district court ever engage in that theory? No, Your Honor, that's precisely why I, by saying the district court construed the nature of the Japanese action. The Japanese action sought direct liability for conduct that began, concealed conduct that began in February 2019 and concluded in August 2019. That's what we've just covered, so I'm going to interrupt you if I might, forgive me, but I want to make sure my colleagues have a chance, and I just want to get through this of my questions if I could, please. So my question is, you initiated that action in Japan, and I think you didn't see it through, and so I can't, and I don't think you ever sued Nakajima Japan in the United States, is that right? Well, there is an action pending in the Los Angeles Superior Court against WeActive and Nakajima Co. even though... For what? For its actions after November 19? Correct, after February 2019 on, for that conduct that was asserted in the Japanese action, that is now pending in the Los Angeles Superior Court. Okay, I just have one other question. The fees that we're talking about here are fees that were incurred, as I understand it, for defending against the Japan action, is that right? The Nakajima Japan should be held liable for its own conduct. Correct. I don't have any other questions. All right, so, and I think, Your Honor, your question... So when you say it's held liable for its own conduct, the facts that it alleged was basically that it took over Nikko World's business, right? Well, yes. Right, and so therefore, it was engaging in the same business that Nikko World was, which was the basis for the alter ego theory in the United States, wasn't it? No, no, the alter ego theory was based on unity of interest, meaning that Nakajima Japan is the parent company, and allegations and proof submitted to the Superior Court, or the District Court, that Nakajima Japan had drained the bank account of Nikko and the other entity defendants proven by bank statements prior to November 2018. Again, the conduct in the Japanese action is based on what occurred from February 2019 through August 2019, and discovered in May of 2020. And also, I'm not sure I saw a response to the District Court's reasoning that Syscom could have engaged in post-judgment discovery to discover the conduct that occurred in February 2019 and onward in terms of draining assets, and that that information would have supported a finding to add Nakajima Japan under essentially the justice element that the District Court ruled against you on in your original motion to add. And a lot of your briefing talks about how you could not have discovered that information because discovery had closed, but I'm not sure why you couldn't have engaged in the post-judgment discovery as noted by the Court. Your Honor, an entity in Syscom's position has two options. It can either do post-judgment discovery and then bring a motion to add, or it can file a new lawsuit and use that new evidence that wasn't considered in the underlying litigation in the new lawsuit. And so... Right, right, right. What this District Court said was that all of the facts that relate to this new action occurred well before this Court denied Syscom's motion to add, and well before the Court granted Nakajima Japan's fees motion. So, how do you respond to the District Court's claim? Well, it really didn't. The conduct occurred between February 2019 when Nakajima Co. decided that it intended to close down Nikko. In July 2019, Nakajima began to sell the products that Nikko sold in the United States via Amazon. And then in August 2019, Nakajima Japan transferred the business to WeActive. The motion to add Nakajima Co. as a judgment debtor, that was brought in September 2019. You're saying the District Court clearly erred in that finding? Yes. And you said you wanted to reserve 10 minutes, but you're down to six. Well, let me reserve those six minutes post-Council's rebuttal. All right. Thank you. Thank you. All right. Mr. David? May it please the Court, Henry David Ford Pelley, Nakajima Co. Ltd., which all of us have been calling Nakajima Japan, to distinguish it from Nakajima USA. First, I wish to thank the Court, the panel, and Mr. Gilchrist for your patience with respect to my sudden illness last month. You may hear some residual coughing and a little frog in my throat, I guess. I'll try to stifle that, and I will mute my mic whenever Mr. Gilchrist is talking. Addressing the points that each of the judges have raised when Mr. Gilchrist was talking, it is sophistry, in my view, to say that alter ego does not involve the conduct of the parent. Mr. Gilchrist did point out that it requires unity of interest. He's missing the second point of alter ego, or the second element of alter ego, which is injustice, which does involve the conduct of the parent. Here, Mr. Gilchrist pointed out that the alter ego claim and his evidence dealt with the alleged quote, draining of the bank accounts, otherwise known as paying for the amounts the subs owed the parents. That is conduct by the parent, and the exact conduct of which they complained in the Japanese action. They aren't different facts. They're the exact same facts, or at least types of conduct, i.e., a parent controlling the subs, allegedly for its own benefit, to the alleged detriment of a judgment creditor, such as Syscom. So to say that there's a difference is not correct. In addition, if all that was asserted was the Article 709 claim, i.e., again, the dissipation of the subsidiary's assets for the benefit of the parent to the detriment of judgment creditors, one would think that, not one would think, the damages, as in a fraudulent transfer case, would be the amount transferred. For example, if the judgment was $1.2 million and you took out $100,000 in a bank account, the fraudulent transfer or Article 709 claim would be for $100,000, not $1.2. But that's not what the complaint says, and that is not what Syscom told this court, not this panel, but this court in the first appeal, in which it characterized correctly the Japanese action as one in which Syscom was once again seeking to hold Nakajima Japan liable on the judgment, not liable for however much was transferred, but liable on the judgment. And that is what you seek in alter ego. Alter ego is a binary case. If you're liable, you're liable for everything, and if you're not, you're not. That's not an Article 709 case, and that's not a fraudulent transfer case. Mr. Gilchrist, both in the briefs and in oral argument, referenced Article 709, and certainly there is an Article 709. I'm going to call it a cause of action. I have no idea if that's the right term of art under Japanese law, but he's ignoring that, in fact, Syscom also made a claim for denial of legal entity. That sounds as close to alter ego as I can imagine. Our attorney, who was admitted both in the U.S. and in Japan, said that they are equivalent. The judge found they are equivalent. Mr. Nakamura. Counselor, I think that's not contested, but what he's arguing, I don't know if he's right, but it would be helpful for me to hear your response to his argument, which is that his primary theory in the Japan action was to hold, was not the equivalent, Japanese equivalent of alter ego. I don't know what that's called either, but was instead an effort to hold Nakajima Japan liable for its own conduct post-judgment. What is your response to that, please? I thought I did respond, and I apologize I was not clear. Here's what I heard you say. I heard you say that it arises from the same facts, and so that gets in part, I think, that's part of your answer, and I think that gets back to Judge Wardlaw's point, which is the court thought it was the same, the very same facts, and opposing counsel is arguing, no, this was post close of discovery facts. So what is your response there, please? Well, no, it included both the alter ego and the Japanese action included many of the same facts. There were additional facts, and I'm sure that if Mr. Gilchrist follows a second motion to add, he'll find yet more facts, but they're the same sorts of facts, and yes, they are conduct by Nakajima Japan, but that's true whether it's alter ego, Article 709, fraudulent transfer, denial of legal entity, Nakajima Japan has to do something, and what is that something? That something is controlling the assets of its end business, of its subsidiaries, and allegedly transferring assets and business from the subsidiaries to itself, and maybe to a new subsidiary. It's taking money out of a bank account and applying it to accounts receivable. It's taking inventory, moving it from one company to another. It's selling Hello Kitty and Peanuts products. It's doing all the, whether it's through Amazon, through a new subsidiary such as WeActive, but it's all the same conduct by the parent, Nakajima Japan, whichever cause of action you want to talk about. Can you point to a place in the record where I can see the district court acknowledging and ruling on this other theory? Article 709, as opposed to denial of legal entity? The theory that Nakajima Japan should be held liable for its own conduct, post-close of discovery. I do not. I'd have to read the order, nine-page order, but I do not believe the district court articulated it in that way, purely passive. Now, the district court, in the order that's being appealed here, did specifically say that not only did Syscom have the opportunity and means to discover the actions between April 2019 and August 2019, before it filed its motion in September 2019, but in fact learned, quote, some of the facts. So not only could have learned, but actually did learn some of the facts about which it now complains. But more importantly, I, you know, there's a continuing course of conduct. One does an alter ego or denial of legal entity or any of these, you don't just look at one transaction, you look at the entire relationship. And clearly, they thought they had sufficient evidence. And the district court disagreed. Would another transfer have made a difference? We don't know, but they could have. Mr. Gilchrist acknowledged in his discussion that he could have waited, but he chose not to. To be honest, this is the first case I've ever seen with a motion to add a parent before the judgments added. Now, you know, this is not an appeal from the denial of the motion to add. But you know, the reason you're not seeing some cases on some of the issues is the section 187 motion to add is, is, is always done after the Germans entered that wasn't done here. Mr. Gilchrist decided to jump the gun and make a motion to add and now he's complaining that he didn't do the discovery that one always does before one files a 187 motion. You know, if there's a harm here, it's somewhat self inflicted. I made the point if I do wish to provide a citation to the record, because I think it's fairly important, because it is inconsistent with the contention made here in the first appeal. This is at volume six, pages one, excuse me, 1299 to 1300. In asking for a further extension to file the briefs and why in essence, the first appeal should be stayed, although admittedly, that wasn't how it was phrased. So this comes specifically told the court, quote, syscom initiated litigation in Tokyo against appellees in October of 2020, to hold appellees liable for the district court judgment. And quote, syscom believes the appellees will be held liable in the district court judgment through the Tokyo litigation. Clearly, that's not saying there was some transfer of assets or cash or whatever. And that's what we're seeking in Japan, they're saying, we want you held liable on the judgment, which is what happens in alter ego, and that they thought that the Japanese action would in fact, affect the prior rulings of the district court, such as the field ward. So any indication of Oh, no, this is entirely separate. We're not looking to hold them liable on the judgment. It's just if they transferred 100,000, we want to get that 100,000 back. That's just not what they said to this court before. That's not what they told the Japanese court at all. The I do have a citation actually to the record for the district courts indication, not an indication finding that syscom in fact, knew some of the facts, not all the facts, but some of the facts that the of which they now complain, that's a volume five, page 843. I, I am, I am not hearing syscom indicate any issues, or the court having any concerns about the concept of pre judgment versus post judgment fees, section 1717 versus section 685.040. Or, or, or even whether if the, the Japanese action was in the nature of alter ego, whether there'd be a right to recover the fees. And now we got I wish to emphasize a point that I made in my brief, but in rereading it a month ago, and again, yesterday, I realized I really didn't make as strongly as I could have and should have. And that is the while they may have wanted to bring a cause of action under, again, if that's the term of art, Article 709, as well as under this doctrine of denial of legal entity in Japan, under Japanese law, the Japanese court held no, no, no US law applies. So even though our Japanese attorney says that the causes of action in Japan were akin to alter ego, we don't even need to go there. Because if US law applied in the Japanese action, then we don't need to go by analogy, then it was an alter ego case. It was an essence, as Mr. Gilchrist said, you know, he could bring a separate alter ego case, as opposed to do it by motion. And it's an essence as he did, as though he did. So now we want to recharacterize it as fraudulent transfer. But again, that that's never that was not was alleged in Japan. That's not what the lawyer, his Japanese lawyer says it was about. And that's not what the district court found. Unless unless your honors have other questions for me, or if I failed to answer a question, which happens, I thank you. So is all this about that, that syscom was unable to enforce its judgment against the three entities that actually sued in the underlying litigation against Nakajima USA? I'm sorry, your honor, I didn't hear the beginning of the question. So so does this boil down to an allegation at some point that syscom was unable to satisfy its judgment against Nakajima USA, Nico and torrents trading? Yes, and and, you know, I'll be blunt, as we sit here on September 26 2023. The three US with which to satisfy that judgment in full that that this is really boils the background for all of this, of course, I'm sure Mr. Gilchrist would not be pursuing alter ego claims, or the new fraudulent transfer case in LA Superior Court, if he could satisfy it by living on a bank account. But thank you. Okay, Mr. Gilchrist. Yes, your honor. And this is going to be in bullet point fashion, unless your honors have questions. The Japanese action sought damages in the amount of the judgment, the US judgment, the Japanese action didn't seek to enforce the US judgment against Nakajima Japan, it sought damages in the amount of that judgment. Counsel, excuse me, but in in your motion to extend time to file your opening brief for your appeal of the order granting the first fee motion, you described the proceedings in the Japan action as an effort to hold Nakajima Japan liable for the final judgment. Did you not? It was, it wasn't artfully worded, but it's to hold it. Did you not say that in your papers to our court? I did say it in the papers. But if you if the your honors look at the complaint in the Japanese action itself, what the complaint seeks to do is to get damages in the amount of the was entered in the district court. And didn't you also explain that Nakajima Japan would be held liable for the final judgment through the Japan action, as a result of the actions they took in stealth just before the district court confirmed the award? Correct. Excuse me, I'm sorry, Judge Wardley, you're my audio froze up for just a second. So I missed your question. I'm just I'm just I. Okay, my question was, didn't they also explain in the papers before us in their first appeal that Nakajima Japan would be held liable for the final judgment through the Japan action as a result of the actions they took in stealth just before the district court confirmed the award? Thank you. Thank you. Correct, Your Honor, the district court confirmed the arbitration award. And my recollection is July 2019. Again, the decision to close down Nico world, according to the evidence took place was made in February to 2019. Nico world continued to do business through July 2019. That business wasn't transferred to Nakajima Co. And then we active until August 2019. And so all of this, what we're trying, why these facts are even relevant is we're trying to determine whether Nakajima's defense of the Japanese action was, quote unquote, enforcing a judgment. So if their defense of that action in Japan was an effort to keep them from being liable for the damages against their the US subsidiaries, doesn't that constitute enforcing a judgment? The damages that result from violation of Japanese civil code section 709 happen to be the same damages arising from the district court judgment. But that's not unusual in a, for example, a fraudulent conveyance case where the entity is closed down entirely, as opposed to the hypothetical that counsel gave where only $100,000 is taken from the bank account of the entity. But you said you have a separate fraudulent transfer case in state court here, right? Correct. Against? Against we active as well as Nakajima Co. or Nakajima Japan. Basically the LA superior court action is Syscom voluntarily dismissing the Japanese action after the court in Japan tentatively ruled that US law would apply and coming back to the US to allege that the facts arising pre-judgment, not post-judgment where you can do post-judgment discovery, but pre-judgment between February 2019 and August 2019. That conduct gives rise to an independent action for fraudulent conveyance. All we're deciding here was whether Nakajima Japan's defense of the judgment for purposes of section 685.040. Your Honor, again, the Japanese action, the damages sought were the amount of the judgment filed in the district court. It was a misstatement for me to say that it was to enforce that judgment. But counsel, our definition of it, I don't have the precise, it's very broad. Actions taken to enforce a judgment, that language in section 685.040 is very, very broad. So I'm not sure your distinction has a difference. Well, but there is no judgment against Nakajima Japan in the United States for $1.2 million. And so the notion- Counsel, they're saying that they're enforcing the judgment not to add them, not to make them liable for the arbitration award judgment. So their defense, what the district court held, that their defense of the Japan action was an enforcement of the judgment not to add them and make them liable. But the reason that that is error is because the denial of the motion to add, the 187 motion, was based on conduct that took place prior to November 2018. The Japanese action and the pending action in Superior Court is based on independent conduct that didn't start to take place into February 2019. And so this is not- Counsel, right there, when you said independent conduct, do you mean different facts or do you mean independent from conduct of the subsidiary? Your language is a little muddy right there. Well- And I don't know what you mean. So the decision to close Nikko in February 2019 was made by the parent. And the evidence of that is a declaration by Shinji Nakajima, the president of Nakajima Co., he has a declaration submitted- I understand that. I'm trying to, I really want you to tell me what you meant by independent. You're saying that the Japanese action is based upon independent conduct. Do you mean a different set of facts or do you mean conduct actions taken by the parent as opposed to actions taken by the subsidiary? Both. It's independent facts from the facts that led to the judgment in the district court. And it's action independently taken by Nakajima Japan. Okay. And then just to put a finer point, you say independent facts that led to the judgment in the district court, but there are two district court judgments. There's the district court judgment affirming the arbitration award. And then there's the district court judgment denying your motion to add. So the facts of the Japan action are independent from which judgment? Both of those. Both of those judgments were based on facts that culminated when discovery closed in November, 2018. The Japanese action is based on conduct that began in February, 2019. So what I still don't know if I have any answer to is the district court's reasoning that Syscom could have waited to file its motion to add until a later point. And it could have discovered the conduct that occurred between February, 2019 and August, 2019 and filed a motion to add based on those facts at a later time. But Syscom, for whatever reason, chose to those facts. But if it had waited and put in that information, the allegations that it brought up in the Japan action complaint, that would have been relevant to the motion to add. And Your Honor, the problem that I see with the district court's reasoning is that it basically immunizes subsequent tortious conduct. And that's what it does. It basically says, if you don't discover subsequent tortious conduct before bringing one of these motions, then you're barred forever from suing on that subsequent conduct. And that cannot be the law. And it isn't because you're actually suing on it right now in state court. Exactly. That's right. You just aren't entitled to do it in Japan, and you're not entitled to do it in your motion to add. It's this. Anyway, you're well over your time, if you want to sum up. Yeah, Your Honor, one point there. The court in Japan said U.S. law applies. It didn't say that U.S. law couldn't be adjudicated in Japan. Syscom made the decision that if U.S. law applies, then it's best to adjudicate U.S. law in the U.S. court. The Japanese court never said that it didn't have jurisdiction to litigate those claims. It simply said that, I think, tentatively speaking, U.S. law will apply. All right. Thank you, counsel. Thank you. All right. Syscom versus Nakajima Co. is submitted, and this session of the court is adjourned for today. Thank you, Your Honor. Thank you, counsel.
judges: WARDLAW, CHRISTEN, SUNG